J-S42007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| XAVIER S. DURAH | |
| Appellant | No. 1164 WDA 2013 |

Appeal from the PCRA Order July 12, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0004924-2006
CP-02-CR-0011359-2006
CP-02-CR-0015936-2005
CP-02-CR-0015938-2005
CP-02-CR-0016709-2005

BEFORE:  PANELLA, J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.          **FILED SEPTEMBER 12, 2014**

Appellant, Xavier S. Durah, appeals from the PCRA[1] order entered July 12, 2013, by the Honorable Kathleen A. Durkin, Court of Common Pleas of Allegheny County.  We affirm.

The PCRA court described the history of this case as follows.

On August 29, 2007, [Appellant], Xavier Durah, pled guilty to the charges at [five] cases.

[Durah] was charged at CC#200604924 with Criminal Conspiracy, Theft by Deception, and Receiving Stolen Property. The summary of the evidence at the plea was that on November 30, 2004, a juvenile used a cinderblock to smash a side window of an automobile and obtain some of the car's contents,

---

[1] 42 Pa.C.S. §§ 9541, *et seq*.

including a checkbook. An eyewitness would have testified at trial that he saw the juvenile, at the direction of [Durah], forge one of the stolen checks to obtain groceries. Through a search of [Durah's] mother's house, the police recovered the stolen checkbook and another item stolen from the car.

At CC#200515936, [Durah] pled guilty to two counts of Burglary. The Commonwealth summarized that it would have produced evidence that on or about August 16, 2005, [Durah] entered his neighbor's house without permission and took numerous electronic items. Evidence would have also been introduced that [Durah] admitted his involvement in the crime in a statement he made to the police. [Durah] admitted that he had entered the home of a former employer and that he stole property.

At CC#200515938, [Durah] was charged with one count of Burglary. The Commonwealth stated that it would have introduced evidence at trial that on September 18, 2005, [Durah] forced his way into his mother's house without permission and stole some items. [Durah], upon his arrest, gave a written statement admitting his culpability in the burglary of his mother's house.

[Durah] was charged at CC#200516709 with two counts of Robbery, and one count each of Escape, Theft by Unlawful Taking, and Receiving Stolen Property. The Commonwealth would have introduced evidence at trial that on September 24, 2005, [Durah] approached two juvenile girls at a bus stop. [Durah] asked them if they used drugs and said he could sell them some. He also tried to give them alcohol. When the girls declined his offer, [Durah] stated that he had a gun, grabbed their purses and cell phone, and ran. Police were called and the girls gave a detailed description of the assailant and where he ran. A K-9 Officer was brought in and tracked [Durah] to an apartment complex. Officers saw [Durah] who ran when they tried to detain him. When they caught up with [Durah] again, he was placed in the rear of a police car. [Durah] jumped out of the car and ran, dropping the girl's cell phone. He was finally arrested a short time later and identified by the girls.

At CC#200611359, [Durah] was charged with four counts of Aggravated Assault, six counts of Recklessly Endangering Another Person, and one count each of Resisting Arrest, Escape and Disorderly Conduct. According to the Commonwealth's

summary, on July 12, 2006, [Durah] was appearing before the Honorable Lawrence J. O'Toole on the 5th Floor of the Allegheny County Courthouse. At the conclusion of the hearing, [Durah] was being taken into custody, when he fled. [Durah] climbed through a window, and onto the 4th floor roof. A deputy sheriff and an assistant district attorney pursued him on the roof. A brawl ensued, and [Durah] was eventually taken into custody.

On August 29, 2007, [Durah] entered a guilty plea to all of the above charges, and was sentenced as follows:

CC#200604924:

Count 1) 1 to 3 years['] incarceration effective July 12, 2006.

No further penalty on the remaining counts.

CC#200515936:

Count 1) 2 to 4 years['] incarceration effective July 12, 2006.

County 2) 6 years of probation effective upon release from incarceration.

CC#200515938:

Count 1) 5 years['] probation effective upon release from incarceration.

CC#200516709:

Count 1) 5 to 10 years of incarceration effective July 12, 2006.

Count 2) 6 year[s] of probation effective upon release from incarceration.

No further penalty at remaining counts.

CC#200611359:

Count 1) 6 to 12 years['] incarceration effective July 12, 2006.

Count 2) 6 to 12 years['] incarceration consecutive to Count 1.

No further penalty at the remaining counts.

On September 5, 2007, [Durah's] counsel[] filed a motion for Modification of Sentence and Withdrawal of Guilty Plea. On November 2, 2007, the defense motion was denied. No direct appeal was filed.

On May 8, 2008, [Durah] filed a *pro se* [PCRA petition]. On January 3, 2011, counsel filed an Amended Petition for [PCRA] Relief. On March 1, 2011, the Commonwealth filed its answer. On March 11, 201, [Durah's] right to file post-sentencing motions and appellate rights were reinstated *nunc pro tunc*.

On March 22, 2011, Post-Sentence Motions were filed alleging that [Durah's] plea was not knowingly, voluntarily, or intelligently entered into because at the time of [Durah's] plea [he] suffered from severe mental health issues, and was under the influence of medications that left him frightened, confused, and unable to comprehend the plea proceedings. [Durah] also asserted that his plea was involuntarily entered because of the ineffective assistance of plea counsel. It was also asserted that the sentence imposed was manifestly excessive.

Pursuant to Pa.R.CrimP. 720(B)(3)(b), [Durah's] post-sentence motions were denied [by operation of law] on August 1, 2011. On August 11, 2011, a Notice of Appeal was filed. … On March 27, 2012, [Durah] discontinued his appeal.

On April 26, 2012, [Durah] filed a new PCRA. Counsel was appointed and on August 16, 2012, [counsel] filed a petition for appointment of a mental health expert. The petition was granted. On March 5, 2013, counsel filed an amended PCRA petition and on April 11, 2013, the Commonwealth filed its answer. On April 25, 2013, [the PCRA court] issued a Notice of Intention to dismiss pursuant to Pa.R.Crim.P. 907. On July 1, 2013, the defense responded to the notice of intention to dismiss and on July 12, 2013, [Durah's] PCRA was dismissed without a hearing.

PCRA Court Opinion, 12/20/13 at 1-5 (footnotes omitted). This timely appeal followed.

On appeal, Durah raises the following issues for our review:

Whether Mr. Durah's guilty plea was involuntary, unknowing and unintelligent because he was on powerful psychotropic medications at the time of his guilty plea and therefore unable to fully understand and comprehend the nature and gravity of the charges against him.

And whether plea counsel was ineffective in failing to investigate his client's obviously impaired state of mind and in otherwise failing to ensure the voluntariness and legality of the guilty plea.

And, whether the PCRA court abused its discretion in summarily denying relief while failing to meaningfully consider or resolve material factual disputes raised by proffers of lay and expert witnesses.

Appellant's Brief at 5 (unnecessary capitalization omitted).

Our standard of review of a PCRA court's denial of a petition for post-conviction relief is well settled. We must examine whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *See Commonwealth v. Hall*, 867 A.2d 619, 628 (Pa. Super. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *See Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001). Our scope of review is limited by the parameters of the PCRA. *See Commonwealth v. Heilman*, 867 A.2d 542, 544 (Pa. Super. 2005).

Durah claims that his plea was entered involuntarily, unknowingly, and unintelligently. Durah could have raised this claim on direct review—had he pursued a direct appeal. Therefore, this claim is waived. *See*, *e.g.*, *Commonwealth v. Zook*, 887 A.2d 1218, 1227 (Pa. 2005). In any event, we explain below why, if it had been raised on direct appeal, it would have failed.

- 5 -

In assessing the voluntariness of a guilty plea, we note that "[t]he law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily and intelligently made." ***Commonwealth v. Yager***, 685 A.2d 1000, 1004 (Pa. Super. 1996) (*en banc*) (citation and internal quotation marks omitted).

> With regard to the voluntariness of a plea, a guilty plea colloquy must affirmatively demonstrate the defendant understood what the plea connoted and its consequences. Once the defendant has entered a guilty plea, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Competence to plead guilty requires a finding that the defendant comprehends the crime for which he stands accused, is able to cooperate with his counsel in forming a rational defense, and has a rational and factual understanding of the proceedings against him.

***Commonwealth v. Willis***, 68 A.3d 997, 1002 (Pa. Super. 2013) (internal quotation marks and citations omitted).

Instantly, the trial court engaged in a lengthy guilty plea colloquy, during which Durah indicated that he had voluntarily filled out and signed the written guilty plea form with the assistance of his attorney. ***See*** N.T., Guilty Plea Hearing, 8/29/07 at 27-28. Durah acknowledged that he understood the guilty plea form, the nature of the crimes for which he was charged, and that he was pleading guilty because he was guilty. ***See id***. at 28. Significantly, the following exchange occurred regarding Durah's mental state at the opening of the hearing:

JUDGE DURKIN: Have you had any drugs or alcohol in the last 48 hours?

DEFENDANT DURAH:  No, ma'am.

JUDGE DURKIN:   Are you presently taking any prescribed medication?

DEFENDANT DURAH:  Yes, ma'am.

JUDGE DURKIN:  Are you clear-headed right now?

DEFENDANT DURAH:  Yes, ma'am.

JUDGE DURKIN:  Are you able to understand everything that's going on?

DEFENDANT DURAH:  Yes, ma'am.

JUDGE DURKIN:  Are you able to make decisions?

DEFENDANT DURAH:  Yes, ma'am.

JUDGE DURKIN:  You seem fine to me, but I wanted to make sure that was on the record since you are taking some prescribed medication.

*Id*. at 3.

Despite Durah's contention that his use of "powerful psychotropic medications … left him frightened and confused" such that "he did not fully understand the gravity of the charges," Durah made sworn statements to the court during the guilty plea colloquy indicating that his use of prescribed medication did not affect his judgment or his ability to understand the nature of the proceedings.  "Appellant is bound by these statements, which he made in open court while under oath, and he may not now asserts grounds for withdrawing the plea which contradict the statements."  *Willis*, 68 A.3d at 1009 (citing *Commonwealth v. Turetsky*, 925 A.2d 876 (Pa. Super. 2007)).  We further note that the trial court did not observe any indication that Durah's mental state was compromised and expressly

indicated that he seemed "fine" prior to conducting the colloquy. N.T., Guilty Plea Hearing, 8/29/07 at 3. Accordingly, we would have found no evidence to suggest that Durah's use of prescription medication during the hearing rendered his guilty plea unknowing or involuntary. **See Willis**, **supra**, at 1009 ("Simply put, the mere fact Appellant was taking prescribed psychotropic medication at the time of his plea does not, of itself, result in the conclusion he was unable to enter a knowing, voluntary, and intelligent guilty plea.").

We likewise find no merit to Durah's claim that the ineffective assistance of trial counsel rendered his guilty plea involuntary. "Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." **Commonwealth v. Hickman**, 799 A.2d 136, 141 (Pa. Super. 2002) (citation omitted). "Where the defendant enters his plea on the advice of counsel, 'the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.'" **Id**. (citations and quotations omitted).

In reviewing an ineffectiveness claim, we begin with the presumption that counsel was effective. **See Commonwealth v. Duda**, 831 A.2d 728, 732 (Pa. Super. 2003).

> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without any reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's

ineffectiveness, i.e. there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. If a reasonable basis exists for the particular course chosen by counsel, the inquiry ends and counsel's performance is deemed constitutionally effective.

*Commonwealth v. Lauro*, 819 A.2d 100, 105-106 (Pa. Super. 2003) (citations omitted). Failure to satisfy any prong of the test requires that the claim be dismissed. *See Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. 2004).

Herein, Durah premises his ineffective assistance of counsel claim on counsel's alleged failure to "investigate and ascertain … the nature and extent of his client's mental infirmities and their effect upon his ability to knowingly and voluntarily plead guilty or to knowingly enter into a general plea of guilty." Appellant's Brief at 20. As we have already determined that Durah is bound by his sworn statements to the court affirming his unimpaired mental abilities, he cannot establish that his underlying claim is of arguable merit. Accordingly, his challenge to trial counsel's effectiveness fails.

We find no error in the PCRA court's dismissal of the PCRA petition without a hearing.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/12/2014